## C. I. T. CORPORATION *vs.* G. WILMONT HUNGERFORD.

MALTBIE, C. J., HINMAN, AVERY, BROWN and JENNINGS, Js.

Argued October 15th—decided December 21st, 1937.

*Maxwell H. Goldstein,* for the appellant (plaintiff).

*James E. Russell,* for the appellee (defendant).

BROWN, J.   Owen Motors, Inc., sold an automobile to Jacob P. Treciokas under a conditional sale contract duly recorded in the office of the town clerk of Watertown.   The contract and note were assigned to the plaintiff.   Thereafter, and before Treciokas, who was in default, had completed his payments, the car was attached by the defendant, a deputy sheriff, in a suit brought against Treciokas by Joseph P. Richards. The plaintiff brought the present action to replevy the automobile from this attachment.   The instrument containing the conditional sale contract was made a part of the complaint.   The purchaser signed and acknowledged the contract, but the defendant claims it was not properly acknowledged by the seller. Further facts relating to the acknowledgment of the instrument are stated later in this opinion.   The question determinative of the appeal is whether the conditional sale contract was acknowledged in accord with the provisions of General Statutes, §§ 4697 and 4699, so as to be valid against an attaching creditor.

These statutes provide that conditional sales contracts shall be in writing, acknowledged before some competent authority, and filed in the town clerk's office in the town where the vendee resides, and that conditional sales not made in conformity with these provisions shall be held absolute sales except as between vendor and vendee and their personal representatives.   Since the statute does not prescribe the particular form of instrument by which conditional sales must be made, an instrument signed by the vendor alone, or by the vendee alone, or by both the vendor and vendee, may be sufficient according to the

nature of the instrument evidencing the sale. *National Cash Register Co.* v. *Lesko,* 77 Conn. 276, 280, 58 Atl. 967. But when an acknowledgment is necessary to the validity of an instrument it is the acknowledgment of the party or parties executing the instrument and to be bound by it which is required. *Commercial Credit Corp.* v. *Carlson,* 114 Conn. 514, 517, 159 Atl. 352. The plaintiff claims that only that portion of the instrument in the complaint which includes the signature of the purchaser with those of the two witnesses thereto, and what precedes them, constitutes the conditional sale contract; that Treciokas alone executed and is bound thereby; and that therefore his acknowledgment only is sufficient to satisfy the statutory requirement as to a valid conditional sale. The defendant contends that the entire instrument, including the signature of Owen Motors, Inc., at the bottom, comprises the contract; that both executed and are bound thereby; and that therefore a valid acknowledgment by this corporation is also essential. In determining which contention is correct we refer to the portion of the contract above specified in reciting the plaintiff's claim as the "first part," and the rest of the instrument as the "second part."

By the first part of the contract, Treciokas as purchaser, acknowledges the receipt of the car, agrees to pay therefor as provided, agrees title shall remain in the seller until it is fully paid for, and makes other promises to safeguard the interest of the "holder hereof." These include a provision that the holder may retake and sell the car, crediting the amount realized upon the balance due from the purchaser, followed by the words: "any surplus shall be paid to the purchaser." Aside from what may be involved in these provisions for full credit to the purchaser of whatever is realized net from such retaking of the car,

the language of the first part gives rise to duties upon the part of the purchaser alone, and imposes no obligation upon the seller or holder. The second part not only contains an assignment of the seller's interest in the car to the plaintiff, but begins with these words: "The within contract is hereby accepted." Accordingly if both parts together comprise the contract, the words just quoted in connection with the provisions from the first part above referred to, constitute a promise by the seller to give to the purchaser the benefit of any net amount realized, if the car is retaken and sold for the latter's account. So interpreted, both the seller and the buyer executed the contract and are bound thereby.

To determine what did constitute the contract, the form and nature of the instrument and the language used in both the first and second parts thereof must be considered in the light of the subject-matter, the apparent purpose of the parties, and the surrounding circumstances. First of all, both parts appear on a single sheet of paper, printed in uniform type and with nothing in title or form to indicate that it is other than a single instrument, the only title or designation being "Conditional Sale Contract Connecticut and New Mexico," printed at the middle of the top of the paper. There is no break or spacing between the first and second parts, other than the minimum essential to provide two blank lines for purchasers' signatures at the right, and for witnesses' signatures at the left. Similar space and lines appear at the bottom for the dealer's signature at the right, and that of a witness and the date at the left. The title, type, form, and spacing indicate that the whole sheet comprises but one instrument.

The printed wording likewise indicates that the two parts together constitute a single contract. It con-

tains the provisions of the conditional bill of sale of the car from the seller to the purchaser, which apply to the particular transaction defined by the typewritten terms inserted, and also the assignment of this conditional bill of sale to the plaintiff. These might well have been prepared as two distinct and separate instruments. The plaintiff, however, evolved the combined form here in question and furnished it to the seller to be used in this transaction. Its wording shows that it was very carefully prepared for the plaintiff's use in its business of financing automobile purchases and in at least one respect evidences that the plaintiff intended it to be executed by both seller and purchaser as a single instrument. Thus in the first part the purchaser agrees that he has not dealt and will not deal with the seller as the plaintiff's agent. By its above quoted acceptance in the second part, the seller joins in this agreement. This benefits the plaintiff and thus is indicative of its intent above stated. Nor is the fact that the undertakings of the purchaser are grouped in the first part which is immediately followed by his signature only, while most of the undertakings of the seller are set forth in the second part followed by its signature only, necessarily inconsistent with this intent. The simpler phrasing so made possible suggests sufficient reason for the form so adopted.

The plaintiff in submitting this form of instrument to the seller to use for the purpose contemplated, intended its execution as a single instrument and that both parts thereof, and not the first alone, should comprise the contract between the seller and purchaser. This intention is further evidenced by the printed instructions on the back of the duplicate calling for acknowledgments "by both purchaser and seller." It is also indicated by its understanding of the transac-

tion expressed in its allegation in paragraph two of its substituted complaint, that the "contract was duly executed by both parties and duly acknowledged by them." It is likewise apparent that the seller, realizing that it was necessary to meet the plaintiff's desire and intention in this regard to obtain the financing needed, in executing the contract intended to comply therewith. A similar intent on the purchaser's part is evidenced by his execution of the contract, his acknowledgment of the receipt of a copy thereof, and his payments made thereunder. The contract so executed, without alteration or modification of any of its printed provisions, constituted their mutual compliance with this intent. Therefore, the second part including the express acceptance by the seller is a part of the contract.

Upon this issue as to what comprised the contract, as the question is presented by this record, the principle in the Restatement of the Law of Contracts, Vol. 1, § 260, p. 373, defining the distinction between a "condition" and a "promise," is not applicable. The plaintiff urged that since thereunder the provision in the first part that the seller should credit the value of the car to the buyer's account if retaken on the latter's default, would be a condition only, as distinguished from a promise by the seller, the latter neither executed nor was bound by the contract. Whatever force, if any, this claim might have were the first part alone the contract, it has none upon the situation before us where it is comprised of both parts together, for the reasons we have pointed out. Even were these deemed insufficient of themselves, the further fact that the seller, whose agreement the second part is, and who must take the responsibility for its contents, has included therein the provision expressly accepting the undertakings of the buyer contained in the first

part, is conclusive. This discloses the seller's intent that those undertakings before becoming operative should be formally accepted by it. Manifestly also, the plaintiff intended that such acceptance should be made by the seller before the contract could become acceptable for assignment to it. Both parties thereto executed and were bound by the contract.

Accordingly, as we have already stated, the valid acknowledgments of both the seller and the purchaser were essential to afford the plaintiff as the seller's assignee the protection of § 4697. *Commercial Credit Corp.* v. *Carlson,* supra. The defendant's contention is that there was no valid acknowledgment by Owen Motors, Inc., the seller, and that therefore under § 4699 the transaction was an absolute sale to Treciokas, and the car is subject to the attachment made by the defendant for Richards as a creditor of Treciokas. Whether there was a valid acknowledgment by Owen Motors, Inc., is the remaining question determinative of this appeal.

The finding discloses these facts. The "Signature of Dealer" appearing at the foot of the contract is "Owen Motors, Inc., By Hans C. Owen, Jr. Sec'y.", of which the words "Hans C. Owen, Jr. Sec'y." were written in by Hans C. Owen, Jr., when the notary public presented the papers to him. He is secretary of Owen Motors, Inc. Owen, Jr., made no statement to the notary concerning the execution of them, and none was asked. Owen Motors, Inc., had a corporate seal but it was not imprinted upon the papers. When Owen, Jr., signed, the acknowledgment after the date and venue, which was a printed form filled in by the notary, read: "personally appeared H. C. Owen to me personally known, who being by me duly sworn, did say that he is President of Owen Motors, Inc., within named, that he knows the seal of said corporation,

that the seal affixed to said instrument is the seal of said corporation and that said instrument was signed and sealed in behalf of said corporation by authority of its Board of Directors, and said H. C. Owen acknowledged the execution of said instrument to be the free act and deed of said corporation by it voluntarily executed." After securing Owen, Jr.'s, signature, the notary, as such, in another room signed her own name "Nora M. McNamee" at the bottom of the acknowledgment clause. "H. C. Owen" refers to Hans C. Owen, Sr., who is president of Owen Motors, Inc. He had nothing to do with this contract or its execution. Mrs. McNamee had prepared the papers in the expectation that he would execute them for the corporation. Through an oversight after Owen, Jr., had signed them, she neglected to substitute "Sec'y." for "Pres." in the acknowledgment clause as she had intended. Both she and Owen, Jr., acted in good faith and without intent to misstate the facts.

Passing all other defects as regards this acknowledgment it is clear that the notary's certificate was incorrect and insufficient under the statute. On the face of the instrument it appeared that while the contract was signed by "Hans C. Owen, Jr. Sec'y." it was acknowledged by an entirely different person and officer, "H. C. Owen" as "President." This, appearing on the records, was all that a stranger such as a bona fide purchaser from or attaching creditor of the vendee would have notice of or be bound by. Under the statute not merely must there be a proper acknowledgment but there must also be a correct certificate of that acknowledgment attached to the contract when filed for record, otherwise such creditor or purchaser, upon finding an improper acknowledgment of record, would be justified in dealing with the article as the property of the vendee. *National Cash Register Co.* v.

*Lesko,* supra; *Liquid Carbonic Co.* v. *Black,* 102 Conn. 390, 392, 128 Atl. 514; *Commercial Credit Corp.* v. *Carlson,* supra. Therefore, under the provisions of §§ 4697 and 4699, already recited, the sale of this car to Treciokas was absolute in so far as the rights of Richards, his creditor, are concerned. Consequently the defendant who had taken possession of it under the writ of attachment issued to secure Richards' claim, is entitled to possession as against the plaintiff, and the court properly rendered judgment for the defendant on both the complaint and counterclaim.

There is no error.

In this opinion the other judges concurred.